MARY W. COOLEY v. MARY A. BARCROFT, SAMUEL K. KILLE AND WILLIAM M. RUNK, LATE PARTNERS, TRADING AS BARCROFT & CO.

1. Where a bill of exchange is drawn upon a married woman for the purpose of paying a debt due by a third person to the drawer, her acceptance is void.

2. Where there is on one side in the court below, direct testimony as to the existence of a fact, and there is no counter testimony offered upon the other side, and the testimony of the witnesses offered to prove such fact is not impeached by proof of character, or shaken upon cross-examination, or rendered suspicious by the inherent improbabilities of the story, then, upon review, the legal inference will arise that such fact exists, and a judgment in opposition thereto will be reversed.

On *certiorari.*

The suit before the justice was brought to recover the amount alleged to be due on an accepted draft, a copy whereof is as follows:

"$65.50.          PHILADELPHIA, Jan'y 1, 1879.

"Ten days after date, pay to the order of Mr. J. P. Smith, cash'r, for coll'n, sixty-five $50/100$ dollars, value received, and charge the same to account of

"BARCROFT & CO.

"To Mrs. M. W. Cooley, Lambertville, N. J."

[Endorsed.—"Accepted—payable at the Amwell National Bank.          M. W. COOLEY.

"Judgment obtained before me.

"Feb. $10/13$.          J. HAYHURST, *J. P.*"

This appeal coming on to be heard before the court, the appellees, Barcroft & Co., the plaintiffs below, to maintain the issue on their part, produced as a witness Henry B. Tenner, their book-keeper, who testified that he sent a statement of a bill of goods bought at plaintiffs' store to the defendant.

It appears that subsequently a bill of exchange was drawn upon her for the amount of this bill, by the plaintiffs, payable to their collecting agent, the cashier of a bank. The defendant accepted the bill.

The bill was dishonored. Subsequent thereto, the defendant wrote to the plaintiffs, saying that she expected to receive some money, and would pay the amount of the bill.

On the part of the defence, the defendant herself swore that she did not buy the bill of goods for which the acceptance was made; that she was not present at the store at the time of their purchase; that she afterwards learned they were bought by her daughter, Mrs. King, residing in Philadelphia, and the defendant never authorized such purchase nor received the goods; that she accepted the bill because, after receiving the statement, she had a promise from Mrs. King that she, the defendant, should be repaid by the former for her acceptance.

Argued at February Term, 1881, before Justices DIXON, REED and PARKER.

For the plaintiff in *certiorari, C. A. Skillman.*

For the defendant, *J. T. Bird.*

The opinion of the court was delivered by

REED, J. The case shows that the defendant was, at the time when she accepted the draft, and was also, at the time she subsequently wrote her letter containing a promise to pay it, a married woman.

It was also, upon the argument, assumed as a fact that the accepted bill was drawn upon the defendant for a bill which was really due from a third person.

The contention on the part of the counsel for the prosecutor is that the acceptance was a nullity, and that the judgment below, based upon its validity, should be reversed. The obvious ground for such contention is that, in regard to that class of

contracts, including the present, the common law disability of a married woman still exists.

The proviso in the married woman's enabling act reads thus : " That nothing herein shall enable such married woman to become an accommodation endorser, guarantor or surety, nor shall she be liable on any promise to pay the debt, or answer for the default or liability of any other person." *Rev.*, *p.* 637, § 5.

Two positions are taken by the counsel for the defendants in answer to the contention that this acceptance is within this proviso, and so void. The first position is that the acceptance operates as an admission by the acceptor that she had funds in her possession belonging to the drawer, and is also a promise to apply such funds to the payment of the payee therein named. If this contention be true, then the result claimed would follow—namely, that she promised to pay money which she held for, and so owed, the drawer, and her promise was to pay her own, and not another's debt.

But this rule, which engrafts upon the acceptance an implied conclusive admission that the acceptor holds funds of the drawer, is applicable only as between the acceptor and a certain class of holders of the paper.

When an acceptor attempts to set up a want of consideration against a holder for value, or failure of the consideration for such acceptance against a *bona fide* payee or endorsee for value, the implied admission may be invoked. The credit which the acceptor has given by his act having induced the purchase of the paper, he is concluded from impeaching his act. But the rule does not extend to a drawer who asserts his rights as holder of the bill against the acceptor, if the acceptance was for the accommodation of the drawer, or there was a failure of consideration intended to pay between them as an inducement for the acceptance.  *Chitty on Bills* *305.

As between these parties, under such circumstances, the want of consideration, the failure of consideration, and therefore the character of the consideration, may be shown.

The defence in this case rests upon the nature of the consideration.

The defendant was not an accommodation acceptor, inasmuch as (outside of the matter of disability) a consideration existed. The consideration moved to a third party. The acceptance was a promise to pay the debt of Mrs. King.

Now, into whatever hands this promise came, its invalidity was incurable. Whether the holder of the paper was or was not a payee or endorsee for value, makes no difference; nor would the admission of funds of the drawer in the acceptor's hand, and the promise to pay them to such payee or endorsee —which, as we have seen, is an incident of an acceptance—impart any vitality to the acceptance.

Such implied contract and admission is raised by the law-merchant when a drawee writes his name across the face of a bill of exchange. But these implications arise only from a valid signature. The ability to make a contract such as the signature implies is dependent upon a legal ability to write an acceptance. If the acceptance is in effect the payment of, or a promise to pay, the debt of another, the married woman has no ability to make the acceptance, and all the implied admissions and promises usually attaching thereto are null.

If the contract implied should be written, and it contained an admission that the defendant was to pay funds of the plaintiffs' which she holds, yet the moment it appeared as a fact that she held no funds of the plaintiffs,' but the promise was to pay from her own funds the debt of another to the drawer, the promise would be a nullity. And to hold that the married woman is estopped from showing the truth, would validate every contract made by her, if she had been induced to incorporate in it a statement that it was to pay her own debt. Such an admission is only evidence as such, and liable to be overcome by proof of the opposite.

I think the first position of the plaintiff's counsel is not tenable.

Nor do I see how the second position can be supported. This position is that, by the letter of February 12th, written

to the plaintiffs by the defendant, she ratified her contract of acceptance.

But at the time of the alleged ratification, she was under the same disability as when she wrote her acceptance. The power to ratify implies the power to create. The disability which disables a married woman from accepting a bill or giving a promissory note for the payment of another's debt, disables her also from validating such a promise by subsequent ratification.

Upon the assumption, therefore, that the bill was drawn to secure the payment of the debt of a person other than the defendant, the judgment must be reversed.

The case has been considered as if it appeared here conclusively that the acceptance was not for the debt of the acceptee. The cause was argued upon that assumption, and it therefore is highly probable that the case below was treated as showing that fact. But instead of sending up to this court a distinct finding of the inferior court upon this question of fact, as this court has repeatedly enjoined, only the evidence taken upon the trial below is before us. The only point which this court can consider is whether there is any testimony, or any view of the testimony, which will sustain the judgment of the inferior court. The weight and credibility of the testimony is for the consideration of that court, and not for us. *Nestal* v. *Schmid*, 10 *Vroom* 686.

From the state of the case, it appears that there was one witness—the defendant herself—who swore that the goods purchased of the plaintiffs, for which the bill was given and accepted, were bought by another person, and not by or for the defendant. No other witness contradicts this evidence.

The person who is said to be the purchaser of the goods was not sworn. Nothing appears in the cross-examination or by other testimony to impeach the testimony of this witness. Now, to sustain the judgment below, we must assume that the court disbelieved her story and ignored her testimony, although not contradicted. And if the court hearing the evidence could

legally ignore this testimony as incredible, we must assume, as the case.stands, that the court did so.

This position of the case raises a question as to the legal limit of discretion in a court or jury in disregarding uncontradicted testimony. That the province of such court or jury, in passing upon the credibility of a witness, is one not to be lightly restricted, is obvious. The character of a witness or a number of witnesses may be so impeached, or their story so shattered by cross-examination or rendered so doubtful by inherent improbabilities, that their testimony, standing unopposed by direct counter testimony, would be fairly subjected to suspicion. No court, upon review, could say, as a legal conclusion, that, under such circumstances, a judgment which ignored such testimony was illegal.

That there is, nevertheless, legally a limit to the power of the jury or court to ignore such testimony, is apparent. The power of a judge to direct a verdict where upon one side there is a proven case, and upon the other side none, or a mere scintilla of evidence, illustrates the limitation.

If the judge can, as a matter of law, say to a jury that the plaintiff's case is proven, and he is entitled to recover, it is clear that the force of testimony may be such as to exclude the right of the jury to pass upon the credibility of the plaintiff's witnesses.

In the case of *Newton* v. *Pope*, 1 *Cow.* 109, a judgment of a justice was reversed where that officer had found against the testimony of two unimpeached witnesses, on the ground, as certified by him, that he was satisfied that they were biased in favor of the defendants. The court said : " It is difficult to establish a rule which shall regulate and limit the discretion of a court or jury in the degree of credit to be given to the testimony of different witnesses. But there is no difficulty in saying that where the witness is unimpeached, the facts sworn to by him uncontradicted, either directly or indirectly, by other witnesses, and there is no intrinsic improbability in the relation given by him, neither a court nor jury can, in the exercise of a sound discretion, disregard his testimony."